UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| DIANA WOZNIAK, | ) |
| Plaintiff, | ) |
| v. | ) |
| METROPOLITAN LIFE INSURANCE COMPANY | ) Case No: 4:13-cv-2311 |
| SERVE:<br>Director of Insurance<br>301 W. High Street, Room 530<br>Jefferson City, MO 65101 | ) |
| and, | ) |
| VERIZON COMMUNICATIONS, INC.<br>d/b/a VERIZON EMPLOYEE BENEFITS COMMITTEE | ) |
| SERVE:<br>Chairperson of the VEBC<br>c/o Verizon Claims Review Unit<br>100 Half Day Road<br>Lincolnshire, IL 60069-1457 | ) |
| Defendants. | ) |

## **COMPLAINT**

**COMES NOW** Plaintiff, Diana Wozniak, by and through counsel, and for her Complaint, states as follows:

1.  This is an action arising under the Employee Income Security Act of 1974, as amended, 29 U.S.C. § 1001 et seq. (ERISA), to recover benefits due under an employee welfare benefit plan, to recover benefits due under an employee insurance program, to

redress breaches of fiduciary duties under ERISA, and to recover costs, attorneys' fees and interest as provided by ERISA.

2.      This is an action brought pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331.  Under 29 U.S.C. § 1132(f), the Court has jurisdiction without respect to the amount in controversy or the citizenship of the parties.

3.      Venue is proper in this District pursuant to 29 U.S.C. § 1132(e)(2), in that the subject employee welfare benefit plan and employee insurance program are administered in this District, the breaches of duty herein alleged occurred in this District, and all Defendants reside or are found in this District.

## PARTIES

4.      Plaintiff Diana Wozniak (hereinafter "Diana") is an individual residing in the City of St. Louis, in the Eastern District of Missouri.  Diana is a vested participant in a Group Insurance Policy for certain employees of Verizon Communications, Inc, (hereinafter "Verizon"), which provides an employee benefit plan within the meaning of 29 U.S.C. § 1002.  Diana has standing to bring this action as a beneficiary under 29 U.S.C. § 1132(a).

5.      Defendant Metropolitan Life (hereinafter "MetLife") provides coverage for certain employees of Verizon under an employee welfare benefit plan within the meaning of 29 U.S.C. § 1002(1).

6.      Defendant Verizon serves as the plan administrator and sponsor under the meaning of 29 U.S.C. § 1002(16), and Defendant MetLife has been delegated authority for decisions regarding coverage.

7.      MetLife is a New York Corporation doing business in Missouri under a license to do business as a Foreign Insurance Company.

8.      Verizon is a Delaware Corporation with its principle place of business in New Jersey.

9.      Diana was employed as an Accounts Receivable Staff Specialist full-time with MCI beginning in 1997 and continued in the same position with Verizon after it acquired MCI. Diana was responsible for posting customers' electronic payments to their accounts and creating reports.

## COUNT I -- DENIAL OF LONG TERM DISABILITY BENEFITS

10.     Plaintiff incorporates by reference paragraphs 1-9 of her Complaint as if fully set forth as paragraph 10.

11.     On July 6, 2009 Diana was admitted to Barnes-Jewish hospital for 5 days with suicidal ideations and was diagnosed by Dr. Michael Jarvis as suffering from bipolar disorder. After her discharge from Barnes-Jewish, she continued treatment for bipolar disorder with Dr. Thomas Richardson, a psychiatrist.

12.     In 2009 Diana filed for short-term disability and MetLife awarded Diana short-term disability on the basis of the disabling nature of her bipolar disorder.

13.     After her diagnosis of bipolar disorder in July 2009, Diana began psychotherapy with Jennifer Beebe, LCSW, who also believed Diana was suffering from bipolar disorder.

14.     Diana returned to work, but stopped working again on November 19, 2010 when her condition worsened.

15.     On November 20, 2010 she was admitted to St. John's Mercy Hospital psychiatric unit and diagnosed with bipolar disorder.

16. She was subsequently discharged from St. John's Mercy Hospital on November 30, 2010 under the care of a psychiatrist, Dr. Malik Ahmed, who at that time reconfirmed her diagnosis of bipolar disorder.

17. On November 31, 2010 she was admitted to Barnes-Jewish Extended Care for rehabilitation of an orthopedic injury with a secondary diagnosis of bipolar disorder.

18. After she was discharged from extended care, Diana continued under the care of Dr. Ahmed, her treating psychiatrist, on an outpatient basis, and Jennifer Beebe her psychotherapist.  Dr. Ahmed and Ms. Beebe treated her for bipolar disorder.

19. Diana applied for, and received, short-term disability benefits under Verizon's employee benefits welfare plan, administered by MetLife, from November 20, 2010 until she exhausted those benefits.

20. On November 16, 2011 MetLife approved Diana's application for long-term disability benefits (LTD) under the Verizon "Plan for Group Insurance," (the "Plan"), effective starting November 21, 2011.

21. On November 16, 2011 MetLife sent Diana a letter indicating that it decided that Diana's claim for Long Term Disability Benefits under the Plan was subject to a 12-month limitation based on the following policy language:

> *"There is a maximum lifetime benefit period of 12 months for all disabilities due to mental health conditions and self-reported symptoms.*
> *"Mental health conditions are psychiatric or psychological conditions classified in the Diagnostic and Statistical Manual of Mental Health Disorders (DSM), published by the American Psychiatric Association, most current as of the start of a disability."*

22. MetLife's November 16, 2011 letter, was a partial denial of benefits in that MetLife informed Diana that it would terminate her benefits on November 21, 2012, and as such was an adverse benefit determination within the meaning of 29 CFR § 2560.503-1(m)(4).

23. On May 14, 2012, pursuant to the provisions of the Plan, Diana appealed MetLife's November 16, 2011 adverse decision to deny her long-term disability after November 22, 2012.

24. MetLife ignored this appeal and refused to consider Diana's appeal and made a determination, in violation of the Plan terms as well as the Department of Labor regulations governing ERISA, specifically  29 CFR § 2560.503-1(f-h) .

25. By failing to consider and reach a timely benefit determination of Diana's May 14, 2012 appeal, MetLife failed to conduct a full and fair review of Diana's claim.  Such failure is a serious procedural irregularity and constitutes a breach of Defendants' fiduciary duty.

26. On October 10, 2012 MetLife sent Diana a letter stating that it had finally considered the information submitted by Diana on May 14, 2012 and that it was upholding  its decision that no additional benefits would be payable after November 22, 2012.

27. The October 10, 2012 letter from MetLife was sent 149 days after Diana submitted her appeal on May 14, 2012, in violation of the time limits and claims procedures set forth by the Department of Labor regulations governing ERISA as well as the claims procedures set forth in the Plan.  This failure on the part of MetLife to conduct a full and fair review of Diana's claim is a substantial procedural irregularity and constitutes a breach of Defendants' fiduciary duty.

28. Diana appealed the October 10, 2012 denial letter on March 27, 2013.

29. On May 6, 2013, 47 days after Diana submitted her appeal, MetLife wrote to Diana stating that it had not made a decision regarding her appeal of its denial of benefits, but instead MetLife needed Diana to submit to a neuropsychological examination at her own expense before it could make a decision.

30. On May 13, 2013 MetLife, at Diana's request, clarified the specific battery of neuropsychological testing that it was requiring her to undergo at her own expense.

31. MetLife's requirement that Diana pay the fees and costs for a neuropsychological exam in order to make and perfect her appeal constitutes a serious procedural irregularity and is in violation of the Department of Labor regulations governing ERISA specifically 29 CFR § 2560.503-1(b)(3).

32. On August 12, 2013, Diana submitted a report of Dr. Timothy Leonberger who performed the neuropsychological testing that MetLife required.

33. To date, MetLife has never decided Diana's appeal, and the time limits for deciding an appeal contained in the Plan and the Department of Labor regulations has passed.

34. Diana is entitled to bring this lawsuit as her administrative remedies are deemed exhausted by virtue of MetLife's failure to decide her appeal within 90 days, pursuant to 29 CFR § 2560.503-1(l),  which states in pertinent part:

> *"A claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act on the basis that the*

> *plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim."*

35.  The Plan provides that a covered person is Disabled during the first 24 months, including the period the covered person receives short-term disability (STD) benefits, if the covered person is unable to earn more than 80% of her annual benefits compensation at her own occupation or for any employer.

36.  The Plan provides that after 24 months of payments, a covered person is disabled when he or she is unable to earn more than 60 % of her annual benefits compensation from any employer at any gainful occupation for which the covered person is reasonably qualified taking into account her training, education, experience and annual benefits compensation.

37.  Diana is limited from performing the Material and Substantial Duties of her Own Occupation due to sickness or injury.  Specifically, Diana suffers from chronic obstructive pulmonary disease, congestive heart failure and bipolar disorder which collectively preclude her any gainful employment in any occupation.

38.  Diana submitted to Defendants, in a timely manner, the documentation from her treating physicians that she was permanently and totally disabled and unable to perform her own occupation due to bipolar disorder and physical diseases.  Despite such evidence, and by ignoring the credible evidence of Plaintiff's physicians and without having Plaintiff physically examined by an independent physician or vocational expert, Defendant denied Plaintiff's claim for long-term disability benefits.

39. In denying Diana's claim on October 10, 2012, MetLife relied on a "peer-review" of Diana's medical records. The peer-review was conducted by a doctor of Defendants' choosing, Dr. Peter Sugerman, a psychiatrist.

40. Although Dr. Sugerman never met, interviewed or examined Diana, he determined that "doubt still exists," that she suffered hypomanic episodes.

41. MetLife relied on Dr. Sugerman's report to deny benefits and conclude that there were "no independent verifications" of Diana's hypomanic episodes. By requiring "independent verifications" of hypomanic episodes, MetLife violated the terms of the Plan which define mental health conditions the same as they are classified in the Diagnostic and Statistical Manual of Mental Health Disorders (DSM).

42. The relevant DSM, the DSM-IV, requires only the history of a hypomanic episode to fulfill the diagnosis of bipolar disorder type II. By imposing a requirement of independent verification of hypomania episodes, MetLife violated the terms of the Plan by ignoring its own definitions of mental illness which incorporated the definitions provided by the DSM.

43. After Diana submitted the neuropsychological report of Dr. Timothy Leonberger, MetLife requested an additional records review by a neuropsychologist that they hired, Dr. Keven Anne Murphy.

44. Dr. Murphy attempted to diagnose Diana's mental status without examining her, in violation of the Code of Ethics of the American Psychological Association, and concluded that she did not suffer from any limitations at all, which is contrary to the opinions of her treating physicians, Dr. Sugerman and in conflict with MetLife's own previous claims determinations.

45. MetLife failed to look at and consider co-morbidities including Diana's COPD, chronic pulmonary heart disease, congestive heart failure, and bipolar disorder.

46. Defendant operated under a conflict of interest which resulted in the unfounded rejection of Diana's medical treatment providers' findings, opinions and evidence.

47. Plaintiff is entitled to payment of long–term disability monthly benefits in an amount of sixty percent (66 2/3%) of her annual benefits compensation until she turns 65, plus interest for the time that she was wrongfully denied benefits.

48. Plaintiff is entitled to recover reasonable attorneys' fees and costs of this action herein, pursuant to 29 U.S.C. §1132(g).

49. Plaintiff is entitled to prejudgment interest pursuant to 29 U.S.C. §1132(g).

**WHEREFORE,** Plaintiff respectively prays that the Court award her damages against Defendants for past due long-term disability benefits, for prejudgment interest on past due sums, attorneys' fees, costs and for an Order to Pay Plaintiff monthly long-term disability benefits until her 65th birthday, and for such further relief as the Court deems just and appropriate.

## COUNT II- NON-DISCLOSURE OF DOCUMENTS

50. Plaintiff incorporates by reference paragraphs 1-49 of her Complaint as if fully set forth as paragraph 50.

51. On November 16, 2011 MetLife sent Plaintiff a letter, informing Diana that it would terminate her benefits on November 21, 2012. The letter, setting a date that benefits would terminate due to a Plan limitation, was a partial denial of benefits and as

such was an adverse benefit determination within the meaning of 29 CFR § 2560.503-1(m)(4).

52. On December 6, 2011 Plaintiff, through her attorney, requested that MetLife provide documents relevant to claim 711110031622, in accordance with 29 CFR 2560.503.1(h-m).

54.  MetLife received Plaintiff's request for relevant claims documents on December 21, 2011.

55. On December 21, 2011, Shanese Davis, MetLife's employee responsible for handling Diana's long-term disability claim, responded in a phone message to Plaintiff's attorney that MetLife would not provide these documents because there had been no "adverse decision."

56.  On October 10, 2012 MetLife fulfilled Plaintiff's November 16, 2011 request for documents by sending Diana's attorney its entire claim file for short-term and long-term disability.

57.  In accordance with 29 U.S.C. § 1132(c)(1)(b), and 29 C.F.R. §2560.503-1, MetLife had 30 days from December 21, 2011 to send the requested documents.  Having not fulfilled its obligation, MetLife is subject to a civil penalty, payable to Plaintiff, in the amount of  $29,040, which represents a penalty of $110 a day for each day of nondisclosure.

**WHEREFORE**, Plaintiff prays for entry of the following relief against one or both defendants, specifically:

A. Judgment for penalties in the amount of $110 a day, from a date beginning 30 days following the date of that MetLife received the requests mentioned above on

December 21, 2011, until October 12, 2012, which was such time as the plan administrator or any of the other parties assuming or undertaking the responsibilities of plan administrator or otherwise involved, made the disclosures required by law.

      B. For such other and further relief as shall be appropriate in the premises.

      C. For a reasonable attorney's fees to be paid to Plaintiff's attorneys.

      D. For Plaintiff's costs herein expended.

HELLER, GALLAGHER & FINLEY, L.L.P.

_____
Matthew R. Davis (ED Mo 58205)
1670 S. Hanley Road
St. Louis, Missouri 63144
(314) 725-1780
Fax (314) 725-0101
mrdavis@hgflawyers.com

Attorneys for Plaintiff